POWELL *et al. v.* MACON & INDIAN SPRINGS R. R. Co. *et al.*

1. Under the charter of the Macon & Indian Springs Railway Company, and the general clause in the charter of the city of Macon giving it power to control its streets, the mayor and council of the city had the power to grant to the railway company the privilege of constructing and operating a main line of railway, such as the company's charter contemplates, along the streets of the city for the purpose of transporting thereon passenger-cars propelled by electricity; and also had the power to grant to the railway company the right to construct along a street of the city a proper and reasonably necessary spur-track connecting the main line of the railway with a point in the city at which the company had in contemplation the erection of a power-house and a shed for the storage of its cars when not in use.

2. Although the railway company was authorized by its charter to carry both freight and passengers, the grant of rights and privileges made by the city to the company was not invalidated because of a stipulation in the grant that no freight should be carried through the streets of the city by the railway company except by permission of the mayor and council.

v 92-14

3. It was also within the power of the municipal authorities to grant to the railway company the right to construct a power-house and car-shed at a proper and convenient point within the limits of the city. This being so, and the evidence being conflicting as to whether the erection and use thereof at the place selected would result in any injury to the plaintiffs, there was no error in declining to adjudge, in advance of the erection of the power-house, that the use of the machinery which the company expected to employ therein would be a nuisance, and consequently there was no abuse of discretion in refusing the injunction prayed for.

June 26, 1893

Petition for injunction, etc.   Before Judge BARTLETT. Bibb county.   At chambers, January 18, 1893.

Powell and other citizens of Macon, owning and occupying residences on Second street between Walnut and Ocmulgee streets, brought their petition against the Macon & Indian Springs R. R. Co., the Mayor and Council of the City of Macon *et al.*, to enjoin the railroad company from erecting a street-car shed and electric power-house at the foot of Second street, and from constructing a spur-track of street railroad from said power-house along Second street to the proposed main line of railroad on Mulberry street, a distance of about a quarter of a mile ; to declare void the license granted by the mayor and council to construct this spur-track ; and to enjoin the mayor and council from granting any further license to build any street-car track on Second street in front of plaintiffs' property.   The case was heard by the judge upon the petition, the answers of defendants, and affidavits and other evidence introduced by both sides. The prayer for injunction was denied.

The petition alleges, that the portion of the city where plaintiffs' residences are situated has heretofore been appropriated exclusively for residence purposes, and is one of the few sections of the city which the growth of manufacturing industries and the spread of commercial interests has left as desirable residence property.   The defendant railroad company, under its char-

ter and the leave granted to it by the mayor and council, is proceeding to build a line of street railroad in Macon for the carriage of passengers in street-cars propelled by electricity on the trolley system, and has obtained leave of the mayor and council to lay the spur-track in question, not intending it for the use of the public in the carriage of passengers, but solely as a private track to run the cars from the regular line on Mulberry street to the proposed car-shed. The railroad company has no authority under its charter so to use the street, nor have the mayor and council authority to grant to it license so to do, and such grant of license is void. The proposed location for the electric plant and power-house is at the foot of a steep hill where Second street ends and the slope begins towards the river. The residences of Powell and others of plaintiffs are situated just on the brow of the hill; and to establish a power-house in the situation mentioned would be to make their houses untenantable and valueless as residence property, because there would be a continual cloud of smoke wafted into their homes whenever the wind set that way, together with a shower of soot, and the disagreeable odors attendant upon a large consumption of coal and the evaporation of coal-tar. The noise of flying machinery and the hum of electric dynamos would be a nuisance which would largely decrease the value of plaintiffs' property, and force them to abandon it for other locations. The laying of this spur-track for the private use of the railroad company would create a nuisance to plaintiffs without any public benefit, and the establishment of a street-car shed at the place indicated would be an eyesore to the neighborhood. There are many other points along its proposed line where the company could establish the same without injury to the surrounding property-owners, and without running a spur-track any distance from the main line to get the cars to the shed;

and there are many places where the company could place a branch wire, or other points where its power-house could be established, where the same would not be in a position to damage surrounding property-holders. The company has no authority under its charter or the laws of the State to build or operate an electric street-car line on any of the streets of Macon, and particularly on Second street; such attempted use of the charter is a misuse not contemplated therein, the purpose of the charter being to provide for the construction of a railroad between the terminal points therein named. The company does not own the fee simple title to the site upon which it is proposed to erect the power-house, but the property is owned by the East Tennessee, Virginia & Georgia Railway Company, from which the defendant company has obtained some kind of permission to locate its power-house and car-shed there; and in order to avoid purchasing any of the numerous sites immediately along the line of its railroad, readily obtainable at a reasonable price, it is taking advantage of the privilege accorded it for a nominal sum to place its car-shed and power-house at a point to reach which it will have to subject to its private ends over a quarter of a mile of one of the principal residence streets of the city. The site so chosen has a frontage of only twenty-five feet on Second street, and is totally inadequate for the purpose, if the defendant company is really proceeding in good faith to carry out the purposes for which it was given existence by its charter, to wit, to build an electric railroad from Macon to Indian Springs, and to have ten miles of the road built in five years. Two other lines of electric railway legally occupy the streets of the city, running through the principal streets and centers of business to the suburbs, in the direction of Indian Springs, with either of which the defendant company could connect in building the line authorized by its char-

ter, without entering the city to operate a street railroad therein. The petition specifies various ways in which the power-house and other things to be erected, including the overhead electric wires, will be a nuisance and dangerous, decreasing the value of plaintiffs' property without any compensation to them in the use of cars on the street or any benefit to the public; and alleges that the injuries to their property will be irreparable and such as cannot be compensated for in damages, etc.

The answers took issue with the material allegations in the petition, and the evidence was conflicting.

GUSTIN, GUERRY & HALL, J. A. THOMAS and MARION ERWIN, for plaintiffs. WASHINGTON DESSAU and R. W. PATTERSON, for defendants.

LUMPKIN, Justice.

1. By the charter of the Macon & Indian Springs Railway Company (Acts of 1890-91, vol. 1., p. 325), the company was empowered to build and maintain a railroad from a point at or near Macon, to or near a point in Butts county known as the Indian Springs. The purpose of the charter seems to have been to authorize a railway connection between the places named, but not to authorize the establishment of a system of street railways in the city of Macon. The petition, however, does not distinctly raise the question as to whether or not, with reference to the action of the company sought to be enjoined, it was in good faith endeavoring to avail itself of the rights and privileges really secured to it by its charter. Our ruling, as announced in the first head-note, undertakes to state our opinion of what the company has a right to do in the exercise of the franchises granted by the legislature and the municipal authorities of Macon.

The third section of the charter gives the company the right "to construct its railroad across, along and

upon any river, or other waters or water-courses, *streets,* highways or canals, which the lines of said railroad shall intersect or touch"; and in the ninth section it is provided "that said company shall not have the right to take or use any part of any street or public road without the consent of the authorities of the city or county, as the case may be." Construing these provisions in connection with the general clause in the charter of the city of Macon, giving it power to control its streets, we are of the opinion that there is sufficient legislative authority for the company, with the permission of the Mayor and Council of the City of Macon, to construct and operate along the streets of the city a main line of railway such as the company's charter contemplates. That is to say, a railway which would be a *bona fide* and essential part of a line connecting the city of Macon with Indian Springs. It will be observed that the words first above quoted from the charter are quite general, and cannot be fairly said to merely allow the crossing of streets. They are sufficiently comprehensive to permit the construction of a railroad longitudinally along a street, at least for the transportation of passenger-cars propelled by electricity. Under the principle announced in *Daly* v. *Ga. So. & Fla. R. R. Co.,* 80 *Ga.* 793, it may be that the right to lay railroad tracks upon the streets of the city of Macon, and run steam engines upon the same, might require more definite and explicit legislative authority. But be this as it may, we think our ruling in the present case is sound. Common experience and every-day observation show beyond question that there is a wide difference between trains of cars drawn by locomotives of which steam is the motive power, and the ordinary electric passenger-car which is now in common use in the cities and towns throughout the length and breadth of the land. In the one instance, the street may very properly be said to be

burdened with an additional servitude entirely incon-
sistent with the free use of the same by the public; in
the other, this reasoning, in the light of experience,
would not aptly apply.

We do not rule that the city authorities could grant
to this company the rights above mentioned, as to streets
upon which the company was not, in good faith, build-
ing a main line from Macon to the Indian Springs, but
as to which it was improperly using its charter by con-
structing therein parts of a street railway system for
the city of Macon and its suburbs; because, as. above
intimated, this question is not really in the case.

Every electric railway needs a power-house and a
shed for the storage of its cars when not in use, and of
course, has a right to erect the same at a convenient
place or places. They cannot be located in the streets
of a city, and yet would be · useless to the company un-
less connected with its main line. These things being
so, we think the General Assembly intended that this
company should have the right to construct along the
street of a city a suitable spur-track for this purpose,
and that the language of .the charter is sufficient to
effectuate this intention. To deny the right in question
would be to practically prevent the company from hav-
ing a power-house and car-shed within the limits of the
city, and force it to erect these structures outside of the
corporate limits, a result which, in our opinion, could
not be reached under a fair and reasonable construction
of the charter.

2. The company was authorized by its charter to
carry both freight and passengers. The Mayor and
Council of the City of Macon, in granting to it the
rights and privileges above referred to, did so upon con-
dition that no freight should be carried through the
streets of the city except by permission of the Mayor
and Council. Surely this restriction did not invalidate

the grant to the company by the.city. Because the company obtained from the city less than the latter might have granted, affords no reason for declaring void the rights which were actually granted.

3. We have already seen that the company had a right to construct its power-house and car-shed within the limits of the city, and to connect its main line therewith. At the hearing, the evidence was conflicting as to whether or not the location and use of these structures at the place selected by the company would result in any real injury to the plaintiffs. We therefore follow the universal rule applicable in cases of this kind, in holding that the chancellor did not err in declining to adjudge in advance that these structures, and the use of the machinery which the company expected to employ therein, would be a nuisance. There was no abuse of discretion in refusing the injunction.

*Judgment affirmed.*